UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
:
**JOHN SCOTT JORGENSEN**,
:
                  Plaintiff,
:
:
         – against –                 : **MEMORANDUM DECISION AND ORDER**
:
**LYNCH & NEWMAN LAW, ROBERT**  : 24-cv-7452 (AMD) (SIL)
**GREGORY LAW FIRM,** and **KATHY**
**JORGENSEN**                           :
:
:
                  Defendants.
:
------------------------------------------------------------ X

**ANN M. DONNELLY**, United States District Judge:

      The *pro se* plaintiff brings this action against Robert Gregory, named on the docket as "Robert Gregory Law Firm," and Lynch & Newman, LLC, named on the docket as "Lynch & Newman Law" (together the "attorney defendants"), and also against his sister, the *pro se* defendant Kathy Jorgensen, for tortious interference and breach of contract in connection with the administration of his mother's estate. Before the Court are the attorney defendants' motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6) and the defendant Kathy Jorgensen's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] For the reasons below, the defendants' motions are granted.

---

[1] The defendant Kathy Jorgensen does not cite the federal rule that governs her motion, but argues that the plaintiff's claims are "frivolous." (ECF No. 16 at 1.) The Court construes her motion as a Rule 12(b)(6) motion to dismiss.

# BACKGROUND[2]

## I.  This Lawsuit

Alice Jorgensen, the plaintiff's mother, died in 2012.  The plaintiff brings this action in connection with the administration of her estate.  The plaintiff alleges that his sister and brother — Kathy and Peter Jorgensen — and the lawyers who administered the estate engaged in misconduct before and after Alice Jorgensen died.

According to the plaintiff, Peter and Kathy "had written themselves checks from Alice's bank accounts while Alice was under their care;" "Kathy wrote herself a $100,000.00 dollar check and Peter, following his sister, wrote himself a $50,000.00 dollar check."  (ECF No. 1 at 8.)  Alice Jorgensen "countered by immediately" moving her money into an account "out of Peter and Kathy's reach."  (*Id.*)  In 1999, Alice leased an apartment in Rexford, New York, where she stayed until 2011.  (*Id.*)  In 2011, Peter and Kathy "revealed that they had made arrangements" to move their mother "to an insane asylum" near Saratoga, New York.  (*Id.* at 9.)  Alice responded that she did not want to move there.  (*Id.*)  The plaintiff then moved with his mother to Maine.  (*Id.* at 10.)  The plaintiff asserts that in 2011 he "had no idea Peter and Kathy had embezzled $150,000.00 from Alice's accounts."  (*Id.*)

Alice died in 2012, and her estate was administered by the Lincoln County Probate Court in Maine.  (*Id.* at 9, 13.)  Her will named the plaintiff, Kathy, and Peter as beneficiaries.  (*Id.* at 8.)  Alice was a public servant for 23 years and had a Civil Servants Employees Association (CSEA) retirement insurance account.  (*Id.* at 9.)  Peter and Kathy "were so impatient that they took no action in maintaining Alice's CSEA insurance in their haste to get rid of Alice and get

---

[2] The facts are drawn from the complaint as well as the briefing and exhibits.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (in deciding a motion to dismiss, courts can consider documents "incorporated [in the complaint] by reference" or documents upon which the complaint "relies heavily… render[ing] the document integral to the complaint" (citations omitted)).

2

her money." (*Id.*)  The plaintiff asserts that this "failure to maintain Alice's CSEA insurance is sufficient to trigger the provision in Alice's Last Will" that makes the plaintiff the "rightful Executor in Alice's Estate." (*Id.*)

Peter and Kathy "pass[ed] on Alice's large sum of money to [John Lynch and Matthew Newman of] the Lynch and Newman law firm," and they "enlisted the help of the lawyer Robert Gregory." (*Id.* at 10.)  The plaintiff alleges that Gregory's "Fiduciary Interest to [the plaintiff] was a negative number including theft of stock and bonds and theft of Alice's savings account." (*Id.*)  The plaintiff asserts that "Robert Gregory had a stronger allegiance to Alice's money," which "created a Conflict of Interest to make Peter and Kathy's wishes prevail." (*Id.*)  He alleges that Gregory's conflict "was shared by attorneys John Lynch and Matthew Newman which makes them Complicit." (*Id.*)

The plaintiff maintains that the defendants committed tortious interference, "which resulted in dividing the assets of [Alice's estate] between 2 parties; Peter Jorgensen and Kathy Jorgensen." (*Id.* at 7.)  The plaintiff had "a Contract with a third party[,] Decedent Alice Pearson Jorgensen," the "[d]efendants knew about the Contract at the time of the alleged interference," and "attempted to Probate Alice's Will naming Peter as the executor." (*Id.* at 8.)  According to the plaintiff, "[o]nly two beneficiaries were paid by the two law firms . . . : Peter and Kathy." (*Id.*)  The plaintiff also claims that Gregory's conduct "led to a Breach of Contract." (*Id.* at 10.)  He asserts that he "witness[ed] Robert Gregory turn himself into a bald faced liar . . . when Gregory denied changing a copy of [the plaintiff's] signature on a blank sheet of paper into a document designed to create a debt chargeable to [the plaintiff.]" (*Id.* at 11.)[3]  The plaintiff says

---

[3] The plaintiff cites "Board of Overseers Complaint # GCF 22-086," which he says was dismissed "based on a laches defense." (ECF No. 1 at 11.)  He asserts that "a laches defense is not available to someone

3

he was owed $50,000 — "[o]ne third [of] $150,000.00" — and that "[a]ll of Alice's Stocks and Bonds should have been tendered" to him because he was "named as a beneficiary in Alice's Will."[4] (*Id.*) He also asserts that the "passage of time has interfered with [his] ability to become a tractor trailer owner operator," which amounts to "5 to 7 Thousand Dollars a week potential." (*Id.*)

The plaintiff brought this lawsuit on October 25, 2024, invoking the Court's diversity jurisdiction. (ECF No. 1 at 4.) The attorney defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of diversity jurisdiction and Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. (ECF No. 9-1 at 7–16; ECF No. 12-1 at 7–17.) The attorney defendants and defendant Kathy Jorgensen also move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6); the attorney defendants argue that the complaint is barred by *res judicata* and that the claims are untimely, and the attorney defendants and Kathy Jorgensen argue that the complaint fails to state a claim. (ECF No. 9-1 at 16–21; ECF No. 12-1 at 17–21; ECF No. 16.) The defendant Robert Gregory also asserts that the complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process, because he received only a copy of the summons in the mail. (ECF No. 9-1 at 21.) The Court gave the plaintiff two extensions to respond to the defendants' motions; on March 6, 2023 the plaintiff filed a "preliminary statement," which the Court construes as an opposition to the defendants' motions. (ECF No. 21.) In that statement, the plaintiff appears to address some

---

who stands with Unclean Hands" and that Gregory "implied that what [the plaintiff] saw with [his] own eyes was not true." (*Id.*)

[4] The plaintiff alleges that Gregory "seized all of Alice's stocks and Bonds to be given to Peter and Kathy, Approximately 50 Thousand Dollars worth." (*Id.* at 11.)

4

of the defendants' failure to state a claim arguments (including the statute of limitations (*id.* at 2–3)), but does not address the jurisdictional arguments.

## II.     The Plaintiff's Earlier Lawsuits

In 2022 and 2023, the plaintiff filed two lawsuits in the United States District Court for the District of Maine against essentially the same defendants for claims arising out of the administration of his mother's estate.[5]  Both cases were dismissed.  In the first action, which the plaintiff brought against Gregory, two lawyers at Lynch & Newman, and Kathy and Peter Jorgensen, the court dismissed the complaint for lack of complete diversity; the court held that the plaintiff and at least one defendant, attorney Matthew Newman, were citizens of Maine.  *See Jorgensen v. Jorgensen*, No. 22-CV-397, 2023 WL 2308701, at *1 (D. Me. Mar. 1, 2023), *report and recommendation adopted,* No. 22-CV-397, 2023 WL 3006490 (D. Me. Apr. 18, 2023), *aff'd,* No. 23-1408, 2024 WL 4753659 (1st Cir. July 10, 2024) (the "first District of Maine action").[6]

The plaintiff brought a second action against his siblings; he filed a "'complaint to amend caption,' stating that he had removed all non-diverse defendants [— the Maine-based attorneys — ] and intended the new complaint to replace the previously dismissed case." *Jorgensen v. Jorgensen*, No. 23-CV-333, 2024 WL 4625059, at *1 (D. Me. Oct. 30, 2024), *report and recommendation adopted,* No. 23-CV-333, 2024 WL 5046124 (D. Me. Dec. 9, 2024) (the "second District of Maine action").  The plaintiff's allegations "largely parrot[ed] what [he] alleged in the earlier dismissed action," including claims that his siblings "tortiously interfered with his expectancy in Alice's estate" by "[writing] themselves checks from Alice's bank

---

[5] In the Maine cases, the plaintiff sued the individual lawyers at Lynch & Newman.  In this case, he sues the firm.

[6] Although the court considered Matthew Newman's motion to dismiss, it noted that all three attorney defendants, including Robert Gregory, were "Maine attorneys."  *Jorgensen*, 2023 WL 2308701, at *1.

accounts" and "interfer[ing] with Alice's housing." *Id.* at 2. The court dismissed the second action because, among other reasons, the plaintiff's tortious interference claim was "time barred by Maine's six-year statute of limitations." *Id.*

## LEGAL STANDARD

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id*. "Where a motion to dismiss asserts a lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) as well as other grounds for dismissal, 'the court should consider the Rule 12(b)(1) challenge first.'" *Burlington Ins. Co. v. MC&O Masonry, Inc.*, No. 17-CV-2892, 2018 WL 3321427, at *1 (E.D.N.Y. July 5, 2018) (quoting *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990)). "[I]n resolving a Rule 12(b)(1) motion, 'a district court . . . may refer to evidence outside the pleadings.'" *Molokotos-Liederman v. Molokotos*, No. 23-CV-1654, 2023 WL 5977655, at *5 (S.D.N.Y. Sept. 14, 2023) (quoting *Makarova*, 201 F.3d at 113).

The Court construes *pro se* complaints liberally and interprets them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)). However, the Court "need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist;" accordingly, "[w]hen a *pro se* plaintiff has altogether failed to satisfy a pleading requirement, the Court must dismiss the claim." *Malachi v. Postgraduate Ctr. for Mental Health*, No. 10-CV-3527, 2013 WL 782614, at *1 (E.D.N.Y. Mar. 1, 2013).

6

## DISCUSSION

"The two sources of subject matter jurisdiction for a federal district court are: (1) 'federal question' jurisdiction, *see* 28 U.S.C. § 1331; and (2) 'diversity' jurisdiction, *see* 28 U.S.C. § 1332(a)." *Molokotos-Liederman v. Molokotos*, No. 23-CV-1654, 2023 WL 5977655, at *5 (S.D.N.Y. Sept. 14, 2023).  "To establish diversity jurisdiction, the amount in controversy must exceed $75,000, and the parties must be citizens of different states." *Brown v. Progressive Cas. Ins. Co.*, No. 18-CV-3753, 2018 WL 4404071, at *2 (E.D.N.Y. Sept. 17, 2018).[7]  28 U.S.C. § 1332 "requires 'complete diversity,' *i.e.* all plaintiffs must be citizens of states diverse from those of all defendants." *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 117–18 (2d Cir. 2014) (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 553 (2005)); *see also Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001) ("[D]iversity jurisdiction is available only when all adverse parties to a litigation are completely diverse in their citizenships.").  "[A] plaintiff premising federal jurisdiction on diversity of citizenship is required to include in its complaint adequate allegations to show that the district court has subject matter jurisdiction[.]" *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 64 (2d Cir. 2009) (citing Fed. R. Civ. P. 8(a)(1)).  The Court "construe[s] jurisdictional allegations liberally and take[s] as true uncontroverted factual allegations." *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).

---

[7] The attorney defendants argue that "[s]eparate and apart from Plaintiff's failure to meet the complete diversity requirement," he also fails to satisfy the amount in controversy requirement, because his "claimed damages are only $50,000." (ECF No. 9-1 at 9 n.2; ECF No. 12-1 at 9 n.3.)  The plaintiff alleges damages of "[o]ne third [of] $150,000.000," which "is $50,000.000." (ECF No. 1 at 11.)  He also alleges that "Robert Gregory seized all of Alice's Stocks and Bonds to be given to Peter and Kathy, Approximately 50 Thousand Dollars Worth." (*Id.*)  It is not clear if the $50,000 of "Stocks and Bonds" is different than the $50,000 that is "[o]ne third [of] $150,000.000," but construing the complaint liberally, *Triestman*, 470 F.3d at 474, the Court assumes these are distinct allegations of damages, making the total amount at least $100,000, which exceeds the amount in controversy requirement.

The plaintiff asserts diversity jurisdiction as the basis for the Court's jurisdiction and says that he is a citizen of New York, that the attorney defendants are citizens of Maine, and that Kathy Jorgensen is a citizen of North Carolina. (ECF No. 1 at 2–5.) The attorney defendants argue that there is not complete diversity. First, they argue that the dismissal of the plaintiff's complaint in the first District of Maine action mandates dismissal here, because the district judge in Maine determined that there was no diversity of citizenship between the plaintiff and the attorney defendants, all of whom are citizens of Maine. (ECF No. 9-1 at 7–9; ECF No. 12-1 at 7–9.) Second, they argue that even if the earlier case does not have preclusive effect, the plaintiff is a citizen of Maine, not New York, so there is no diversity jurisdiction in this action against the Maine attorneys. (ECF No. 9-1 at 9–12; ECF No. 12-1 at 9–11.)

The District of Maine decision almost certainly bars the Court from reconsidering the question of diversity in this action. "To determine whether the doctrine of res judicata bars a subsequent action, [the court] consider[s] whether 1) the prior decision was a final judgment on the merits, 2) the litigants were the same parties, 3) the prior court was of proper jurisdiction, and 4) the causes of action were the same." *George v. Storage Am.*, No. 13-CV-9226, 2014 WL 1492484, at *3 (S.D.N.Y. Mar. 6, 2014), *objections overruled,* No. 13-CV-9226, 2014 WL 1494116 (S.D.N.Y. Apr. 16, 2014) (quoting *Corbett v. MacDonald Moving Servs., Inc.,* 124 F.3d 82, 87–88 (2d Cir. 1997)) (alterations in original). The latter three elements are clearly met. The plaintiff brought the first District of Maine action against his sister, Robert Gregory, and John Lynch and Matthew Newman from Lynch & Newman LLC. Like the case in this Court, the first District of Maine action involved state law claims for damages based on the administration of the plaintiff's mother's estate. And, the court in the first Maine action "acted within [its] jurisdiction because 'a court always has jurisdiction to determine its own jurisdiction.'" *George,* 2014 WL

8

1492484, at *4 (quoting *Tancredi v. Metropolitan Life Ins. Co.,* 378 F.3d 220, 225 (2d Cir. 2004)).

With respect to the first element, "a dismissal for lack of subject matter jurisdiction is" generally not "an adjudication of the merits." *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.*, 41 F. Supp. 3d 395, 404 (S.D.N.Y. 2014), *aff'd,* 809 F.3d 737 (2d Cir. 2016) (quoting *St. Pierre v. Dyer*, 208 F.3d 394, 400 (2d Cir. 2000)); *see also Carruthers v. Flaum,* 388 F. Supp. 2d 360, 378 (S.D.N.Y. 2005) ("Unlike dismissals for a plaintiff's failure to state a claim, dismissals for lack of subject matter jurisdiction are not on the merits and are not accorded *res judicata* effect."). However, a dismissal "other than one on the merits . . . precludes relitigation of the issues decided." *George*, 2014 WL 1492484, at *3 (quoting *Bunker Ramo Corp. v. United Business Forms, Inc.,* 713 F.2d 1272, 1277 (7th Cir. 1983)) (alteration in original). "Thus, while dismissal under 12(b)(1) may not bar a determination on the merits of the claim at a later date if the jurisdictional defects have been cured, 'a finding of lack of subject matter jurisdiction is *res judicata* as to that particular issue in subsequent actions between the parties.'" *Id.* (quoting *Barclay's Ice Cream Co. v. Local No. 757 of Ice Cream Drivers & Emps. Union,* No. 79-CV-1611, 1979 WL 1710, at *2 (S.D.N.Y. Sept. 7, 1979)); *see also Spirits Int'l B.V.*, 41 F. Supp. 3d at 404 (prior dismissal "does not preclude a second action on the same claim" only if "the [subject matter jurisdiction] problem can be overcome" (cleaned up)).

The district court in the Maine action determined that the plaintiff and the defendant attorneys were all Maine residents. *Jorgensen*, 2023 WL 2308701, at *1. Indeed, the plaintiff did not dispute his Maine citizenship; rather, he argued that the court should "adopt a standard of 'minimal' rather than 'complete' diversity," which the court declined to do. *Id.* The plaintiff was therefore a citizen of Maine when he filed his complaint in the first Maine action in 2022.

9

*See George*, 2014 WL 1492484, at *4 ("Citizenship is determined at the date of filing."). The Maine court found this to be a jurisdictional defect, which the plaintiff has not cured in this case. "For purposes of diversity jurisdiction, a natural person's citizenship is determined by domicile," which "requires (1) the party's physical presence in the state; [and] (2) the intent to remain in that state indefinitely." *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1227 (S.D.N.Y. 1991). "Although a person may have more than one residence, she may only have one domicile at any one time." *Id.* "Where a party has established a domicile, therefore, the burden for demonstrating that a new domicile has been established lies with the person seeking to establish the change." *Id.* at 1228.

The plaintiff has not met his burden of showing that his domicile changed from Maine to New York since he filed the first District of Maine action. In his form complaint, the plaintiff selected diversity jurisdiction as the basis for the Court's jurisdiction and claimed that he is a New York citizen. (ECF No. 1 at 4.) The plaintiff listed as his address 115 Montauk Hwy, East Moriches, N.Y. 11940. (*Id.* at 12.) However, as the attorney defendants argue (*see* ECF No. 9-1 at 11; ECF No. 12-1 at 11), and as the plaintiff concedes (*see* ECF No. 1 at 31), this is an address for what was until recently the Lufker Airport.[8] In addition, the plaintiff attached his complaint from the first District of Maine action to his complaint in the current action; in the Maine complaint, he gave a Maine address. (*See* ECF No. 1 at 19, 31.) Aside from listing the address of a defunct Long Island airport, the plaintiff has not alleged any facts from which the Court can find that his domicile has changed from Maine to New York. *See Nat'l Artists Mgmt.*

---

[8] The airport appears to have been demolished in July 2025. *See Demolition of historic Lufker Airport to preserve open space,* Suffolk County News (July 31, 2025, at 12:00 ET), https://www.suffolkcountynews.net/stories/demolition-of-historic-lufker-airport-to-preserve-open-space,97728.

10

*Co*, 769 F. Supp. at 1228 ("influential factors" for finding a change in domicile include "the place where civil and political rights are exercised, taxes paid, real and personal property (such as furniture and automobiles) located, driver's and other licenses obtained, bank accounts maintained, location of club and church membership and places of business or employment," and additional relevant factors include "whether the person owns or rents his place of residence, the nature of the residence (i.e., how permanent the living arrangement appears), affiliations with social organizations, and the location of a person's physician, lawyer, accountant, dentist, stockbroker, etc." (citation omitted)).

Even if the Maine district judge's decision did not have preclusive effect, the plaintiff has not met his burden of showing that his domicile changed from Maine to New York. Accordingly, there is not complete diversity of citizenship, and the Court does not have subject matter jurisdiction over this action.[9]

## CONCLUSION

Because the Court does not have subject matter jurisdiction, the plaintiff's complaint is dismissed without prejudice. In light of the plaintiff's *pro se* status, and in an excess of caution, the plaintiff is granted leave to file an amended complaint within 30 days after the entry of this order. If the plaintiff files an amended complaint invoking the Court's diversity jurisdiction, he must make "adequate allegations to show that the district court has subject matter jurisdiction," *Dupont*, 565 F.3d at 64, with truthful and accurate information about his residence. The amended complaint will replace the complaint and must stand on its own without reference to the original complaint. The amended complaint must be captioned as "Amended Complaint" and

---

[9] Because the Court dismisses the plaintiff's complaint for lack of subject matter jurisdiction, the Court does not address the defendants' other arguments regarding personal jurisdiction, improper service of process, and failure to state a claim.

11

bear the same docket number as this Order, 24-cv-7452 (AMD) (SIL).  If the plaintiff does not file an amended complaint within 30 days of this Order or show good cause for an extension of time, the Court will direct the Clerk of Court to enter judgment and close the case.

**SO ORDERED.**

                                                s/Ann M. Donnelly
                                          ANN M. DONNELLY
                                          United States District Judge

Dated:  Brooklyn, New York
           August 25, 2025